### RUBENSTEIN v SEDWITZ

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 11, 1932

Powell & Hooker, for plaintiff in error.
F. R. Hahn, Youngstown, for defendant in error.

FARR, J.

Four different claims of negligence are set out in the petition. It is not necessary now and here to quote them. It is sufficient to say that the claimant charges Dr. Sedwitz with malpractice, in that he administered neo-salversan in doses sufficient in size or so frequently that it resulted in arsenic poisoning.

It is claimed in support of the contention of the plaintiff in error that Dr. Sedwitz did not make the proper tests during the time or immediately preceding his treatments, that there should have been an analysis of the urine, but Dr. Sedwitz said that a test of the urine would not have disclosed the presence of arsenic poisoning. There does not appear to have been any disease of the kidneys or liver or other organs of the body at the time he was sent to Dr. Sedwitz for treatment. Dr. Deitchman, with whom Dr. Sedwitz was acquainted, reported him to be fairly vigorous and strong. Dr. Sedwitz claims that knowing Dr. Deitchman as he did, that he was will-

ing to take his word for the physical condition of Rubenstein and immediately proceeded to the administration of the remedy, neo-salversan.

It is claimed that by reason of this drug, arsenic poisoning resulted. When Rubenstein returned from Pittsburgh from his visit to Dr. Hollander, he had a conversation with Dr. Sedwitz, in which he claimed that Dr. Sedwitz said "I think I gave you the treatment too often, or words to that effect, but Dr. Sedwitz says that it is impossible to determine whether arsenic poisoning will result until certain symptoms develop; that in this case he was unable to so determine. He was asked how many cases of syphilitic infection he had treated. He said about three thousand. He was then asked how many cases of arsenic poisoning he had had and he said that was the first one. He was also asked whether or not he believed or thought that arsenic poisoning might occur. He replied that he did not care. This is asserted to be a sort of inhuman remark upon the part of Dr. Sedwitz, but taken in connection with his other testimony it can hardly be so considered, for the reason, he says, that with each treatment of neo-salversan he offered a prayer. He then gives the reason why he gave a very light dose, and he says that it was 1.5 milograms, which he says would be about the dose to be administered to a child, that he felt that no difficulty in that respect would result, and upon being asked why the doses were not heavier he says that if larger doses were given, that the stimulation to the system is greater and that the possibility of infection to other persons is correspondingly increased, and he explains that such was his reason for giving the smaller doses; that there would be no excitation by reason of stimulation. It is perhaps a matter of somewhat common knowledge that arsenic is a tonic and is frequently administered by medical men for that purpose. Perhaps in the instant case it served a double purpose of opposing the poison in the system, if any, and acting as a tonic as well.

Was Dr. Sedwitz warranted in believing that his patient had syphilis? The record discloses that first was the report of Dr. Deitchman, of whom it is said that he is of good standing in the city, a reputable physician, and by whose conduct it is rather clearly indicated that he believed that Rubenstein had syphilis. He discovered the ulcer in the throat. He made the Wasserman test, which is the usual test to be made under such circumstances, and again it is indicated that he so believed, because

he called in his friend, Dr. Sedwitz, who was a specialist in venereal diseases of men. Then Dr. Sedwitz says squarely in his testimony that Rubenstein had syphilis. He so states in at least one, if not two instances. Therefore, it would seem that it is reasonable to assume that Rubenstein probably had syphilis. Such proposition is fairly well established by reputable testimony; at least it is established that Dr. Sedwitz had good reason to believe that he had. Another, and an additional reason, is that perhaps after the second treatment of neo-salversan, the ulcer in the throat dried up and the fact that there was an ulcer in the throat is well established. Dr. Goldstein, to whom Rubenstein was sent, says that he looked into Rubenstein's throat, discovered the scar or the mark of an ulcer. Sedwitz says there was an ulcer, and Dr. Deitchman says there was an ulcer. Dr. Goldstein was not asked as to his belief with reference to the trouble that Rubenstein had, and, as indicated by a previous remark, there was really a dearth of medical testimony in the case. Sedwitz and Goldstein are the only medical men called. Rubenstein testified and says, at page 81, that for a considerable time he had no itching of the skin, and felt none of the indications of arsenic poisoning, as follows:

"Q. You had no itchy sensation at any time?

A. No sir.

Q. You had no nausea, you were not nauseated?

A. No sir.

Q. You had no dizziness or headaches?

A. No sir."

He says that he had chills and some fever, but Dr. Sedwitz says they are the reaction, ordinary results, from the administration of what might be called a specific, and that they pass away in the course of a few hours.

There is another significant feature in this case. These doses had been given every two days for six days. It is disclosed by the record that arsenic acts very quickly upon the organs of the body, that it is taken up quickly by the body, partly through the liver, sometimes taken up, and parts of it held by the liver, but if this was a real case of arsenic poisoning and nothing else, and due to arsenic alone, it would seem somewhat unusual that not for ten or twelve days after the administration of the last hypodermic did arsenic poisoning, if such it was, develop.

The two well known works on this subject

of Stokes and Morton were frequently called into requisition during the trial. Parts were read into the record, and it should be said that realizing the importance of this case, and of course of all other cases, it should be said that every page of this record has been read in the presence of all members of the court, and it is therefore unnecessary to rehearse further this testimony. Dr. Sedwitz, under a careful and searching cross-examination, sustained himself rather well. It may be said for the court that it has been unable to "place a finger" upon one proposition of testimony that could be considered as a scintilla sustaining the four grounds of negligence set out in the petition, or any of them. More might be said, but it is sufficient to add that the perusal of this record has been found rather interesting from the standpoint of a layman. However, upon a full consideration of the record it is believed that no testimony is disclosed that Dr. Sedwitz had not followed the latest and well recognized methods of treatment. True it is that Rubenstein says that when he returned from Pittsburgh that Dr. Sedwitz said to him "I think I gave you the treatments too often," or words to that effect, but having in mind the contents of this record, the difficulty of discovering arsenic poisoning, the foregoing would not be a confession upon the part of Dr. Sedwitz of a failure in his treatment, because he says he followed the latest approved methods by the best authorities. It would simply mean that after having applied those treatments that possibly it had resulted in the treatments being given too frequently, but not by reason of the lack of judgment or knowledge as to dosage, or as to the time during which they should be given.

It is sufficient to say in conclusion that having found no reversible error in this record, it follows that the judgment must be affirmed.

ROBERTS and POLLOCK, JJ, concur.